IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| David Zimmerman,<br><br>      Plaintiff,<br><br>vs.<br><br>SkyWest Airlines, Inc.,<br><br>      Defendant. | **ORDER**<br><br>Case No. 3:22-cv-45 |

Before the Court are two motions. The first is a motion to dismiss for failure to state a claim filed by Defendant SkyWest Airlines, Inc. ("SkyWest") on June 2, 2022. Doc. No. 10. On June 23, 2022, Plaintiff David Zimmerman responded in opposition. Doc. No. 11. SkyWest filed its reply on July 6, 2022. Doc. No. 12. The second is a motion for oral argument on the motion to dismiss filed by Zimmerman. Doc. No. 13. For the reasons below, both motions are denied.

**I. BACKGROUND**

As alleged, Zimmerman is deaf and communicates by using American Sign Language, speaking, and reading the lips of others, and is an individual with a disability.[1] Doc. No. 7, ¶¶ 13-15. SkyWest hired Zimmerman as a ramp agent at the Devils Lake Regional Airport on October 3, 2019. Id. ¶ 16. This dispute involves allegations of disability discrimination, failure to reasonably accommodate, and retaliation against SkyWest.

After Zimmerman was hired by SkyWest, he took required computer-based trainings ("CBTs") as part of the training program for ramp agents. Id. ¶ 19. He alleges "[s]ome of the CBT modules were not enabled with closed-captioning and were inaccessible [to him] because he could not hear the oral communication and [SkyWest] did not provide captions or text to most of the

---

[1] The factual background, which the Court must accept as true for purposes of this motion, is taken from the amended complaint. Doc. No. 7.

CBT." Id. ¶ 20. Zimmerman asked his supervisor to supply closed captioning for the CBTs on November 6, 2020, and again on November 15, 2020. Id. ¶¶ 21-22. Although he failed the CBT examination twice, he successfully passed after obtaining a written transcript of the CBTs. Id. ¶¶ 23, 26.

After passing the CBT examination, Zimmerman worked for SkyWest as a ramp agent from "approximately November 18, 2020, to January 16, 2020." Id. ¶ 27. According to Zimmerman, during this time, he "safely and successfully communicated with coworkers and executed all of his job duties as a ramp agent with minimal reasonable accommodation." Id. ¶ 28. These job duties included marshalling planes, scanning bags, loading and unloading baggage, servicing and cleaning the interior of the planes, communicating with pilots on baggage reports, transporting the loading ramp for customers, driving machinery, computer data entry, and checking equipment. Id. ¶ 29.

As alleged, SkyWest[2] learned about Zimmerman's disability after his supervisor sent the request for closed captioning for the CBT examination.[3] Id. ¶ 25. Zimmerman further alleges that "[u]pon learning of his disability," SkyWest ordered him to complete a "medical information

---

[2] In his amended complaint, Zimmerman makes allegations specific to corporate SkyWest (as opposed to local Devils Lake management), including references to an Employee Relations Manager, Corporate Human Resource Manager, or "headquarters" in Utah. For ease of reference, the Court will simply use "SkyWest" as it relates to these allegations. The Court will continue to note (as does Zimmerman in his amended complaint) when allegations specifically refer to the Devils Lake management.

[3] As alleged, Zimmerman distinguishes when SkyWest learned about his disability from when the Devils Lake management learned of his disability. According to Zimmerman, Devils Lake management learned of his disability during an initial interview when Zimmerman informed them of his "deafness, use of hearing aids, need for closed captions, and reliance on speech reading for some in-person communications." Doc. No. 7, ¶ 17.

form."[4] Id. ¶ 32. Zimmerman complied, asking his audiologist to complete the medical information form on January 8, 2020. Id. ¶ 34. On January 16, 2020, SkyWest put him on administrative leave to "investigate his demonstrated ability to successfully perform as a ramp agent." Id. ¶ 35. On January 30, 2020, when meeting with SkyWest's Devils Lake management, Zimmerman alleges that he "asked why he was placed on administrative leave and stated that he believed he was being discriminated against based on his disability." Id. ¶ 36. That same day, SkyWest said that it "believed Mr. Zimmerman could not fulfill his essential functions because of his hearing loss." Id. ¶ 38.

On February 3 and 4, 2020, Zimmerman's audiologist met by phone with SkyWest. Id. ¶ 41. The audiologist recommended Zimmerman use "his hearing aids and a head lamp when he is working in the dark" as accommodations. Id. ¶ 41. SkyWest rejected these options. Id. ¶ 41. A few days later, Zimmerman and SkyWest met via phone, and, as alleged, SkyWest expressed "safety concerns" because Zimmerman could not hear and "stated it required an audiologist to do an onsite assessment." Id. ¶ 42. In response, Zimmerman's audiologist requested SkyWest "clarify its intent and purpose of the onsite observation" because his "new hearing aids greatly helped his work even 'with noise protecting earmuffs when in excessive noise' areas." Id. ¶ 43. SkyWest did not respond to that request for clarification and did not have any audiologist complete an onsite assessment. Id. ¶¶ 44-45. Zimmerman further alleges that SkyWest also did not evaluate or assess his ability to safely conduct the ramp agent duties. Id. ¶ 46. Ultimately, SkyWest notified Zimmerman he was terminated on March 19, 2020. Id. ¶ 48.

---

[4] As alleged, "[u]pon information and belief, neither Mr. Zimmerman nor [Devils Lake management] requested or believed it was necessary to further engage in an interactive process regarding any reasonable accommodation request for Mr. Zimmerman's ramp agent duties beyond the request for closed captioning for the CBTs." Id. ¶ 33.

3

In the amended complaint, Zimmerman brings six claims—three arising under the Americans with Disabilities Act (the "ADA") and three arising under the North Dakota Human Rights Act (the "NDHRA"). Doc. No. 7. Under the ADA, Zimmerman alleges claims for failure to accommodate (count I), discrimination (count II), and retaliation (count III). Id. Similarly, under the NDHRA, Zimmerman alleges claims for failure to accommodate (count IV), discrimination (count V), and retaliation (count VI). Id. SkyWest argues the Court should dismiss all six claims because they "fail to state a plausible claim" pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 10.

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678).

While obligated to accept a complaint's factual allegations as true, courts are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" Id. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Alleruzo v. SuperValu, Inc. (In re SuperValu, Inc.), 925 F.3d 955, 962 (8th Cir. 2019) (citation omitted).

More specifically in the context of an ADA case, the United States Court of Appeals for the Eighth Circuit recently opined:

> The complaint is not required to fit any specific model since there is no "rigid pleading standard for discrimination cases." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Instead, the "simplified notice pleading standard," id., merely requires that a complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," id. (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).
>
> ***
>
> [U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.
>
> Swierkiewicz, 534 U.S. at 511, 122 S. Ct. 992; see also Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013) ("Under Swierkiewicz, a plaintiff need not plead facts establishing a prima facie case of discrimination ... in order to defeat a motion to dismiss."); Ring, 984 F.2d at 926 (stating that a prima facie case is an evidentiary standard, which is not the proper measure of whether a complaint fails to state claim). The elements of a successful ADA claim are, however, still "part of the background against which a plausibility determination should be made." Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016) (quotation omitted).

Cook v. George's, Inc., 952 F.3d 935, 938-39 (8th Cir. 2020).

### III. DISCUSSION

With this framework in mind and as an initial matter, SkyWest asserts (and Zimmerman does not dispute) that "ADA claims and NDHRA claims are analyzed the same." Doc. No. 10, p. 3 (first citing McClean v. Case Corp., 314 F. Supp. 2d 911, 916 (D.N.D. 2004); and then citing

5

Fish v. Ristvedt, 192 F. Supp. 2d 1024, 1028 (D.N.D. 2002)). Indeed, both SkyWest and Zimmerman analyzed each ADA claim in conjunction with its NDHRA counterpart. See id. at 2 (explaining why the "failure to accommodate claims (counts I and IV)," the "disability discrimination claims (counts II and V)," and "retaliation claims (counts III and VI)" are implausible); Doc. No. 11, p. 3 n.1 ("This memorandum does not separately analyze the state standards and focuses on the standards only under federal law"). In deciding this motion, the Court similarly analyzes each ADA claim at the same time as its NDRA counterpart, citing the relevant standards under federal law.

### A.     Disability Discrimination under the ADA (count II) and NDHRA (count V)

The first issue raised by SkyWest is whether Zimmerman plausibly alleged claims under the ADA and NDHRA for disability discrimination. The ADA prohibits a covered entity from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Stated another way, "To establish a claim under the ADA and the NDHRA, a plaintiff must show that 1) he is disabled within the meaning of the Act, 2) he is qualified to perform the essential functions of the job either with or without accommodation, and 3) he has suffered an adverse employment action because of the disability." McClean, 314 F. Supp. 2d at 916 (first citing Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir.1999); and then citing Engel v. Montana Dakota Utils., 595 N.W.2d 319, 322 (N.D.1999)); see also Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786 (8th Cir. 1998).

Here, SkyWest focuses on the second element of a disability discrimination claim, arguing that "Zimmerman's own allegations show that he was not qualified[.]" Doc. No. 10, p. 4. To be

considered a "qualified individual," the plaintiff must "(1) possess the requisite skill, education, experience, and training for the position; and (2) be able to perform the essential job functions, with or without reasonable accommodation." Moritz, 147 F.3d at 786-87 (first citing 42 U.S.C. § 12111(8); and then citing 29 C.F.R. § 1630.2(m)). However, SkyWest does not appear to dispute that Zimmerman possesses the requisite skill, education, experience, and training for the position at this point in the proceedings. See Doc. No. 10 pp. 4-6. And, accepting the factual allegations in the amended complaint as true and drawing all reasonable inferences in his favor, Zimmerman has plausibly pleaded that he was able to perform the essential job functions with or without reasonable accommodations. For example, Zimmerman alleges that while he worked as a ramp agent, he was able to "safely and successfully communicat[e] with coworkers and execut[e] all of his duties as a ramp agent with minimal reasonable accommodation." Doc. No. 7, ¶ 28. While SkyWest asserts that Zimmerman "does not allege what essential functions were at issue" (Doc. No. 10, p. 5), he does list several "job duties," including marshalling planes, scanning bags, loading and unloading baggage, servicing and cleaning the interior of the planes, communicating with pilots on baggage reports, transporting the loading ramp for customers, driving machinery, computer data entry, and checking equipment. Doc. No. 7, ¶ 29. Whether these allegations can ultimately support a determination that Zimmerman is a "qualified individual" under the ADA "must be left to a latter stage in the litigation." Cook, 952 F.3d at 940.

More in dispute is the second part of the "qualified individual" analysis and whether Zimmerman alleged he was able to perform the essential job functions of a ramp agent, with or without reasonable accommodation, given that he is deaf. SkyWest frames this argument in connection with its "direct threat" affirmative defense and argues Zimmerman has not alleged a plausible disability discrimination claim because the amended complaint establishes the "direct

threat" affirmative defense on its face. Doc. No. 10, p. 12. Under the direct threat affirmative defense:

> An employee is not a qualified individual if he poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." Emerson v. N. States Power Co., 256 F.3d 506, 514 (7th Cir. 2001) (quoting 42 U.S.C. § 12111(3)). An employee also poses a direct threat if his disability endangers his own safety on the job. Chevron U.S.A., Inc. v. Echazabal, 536 U.S. 73, 76, 122 S. Ct. 2045, 153 L. Ed. 2d 82 (2002). Once an employee presents a prima facie case of discrimination, the burden shifts to the employer to present a legitimate business reason for its decision, which includes the reason that the employee posed a "direct threat." Emerson, 256 F.3d at 514.

McClean, 314 F. Supp. 2d at 919-20.

Although this case unquestionably raises a genuine dispute of whether Zimmerman posed a direct threat and whether he was, in fact, a "qualified individual" under the law, on the facts as alleged in the amended complaint, Zimmerman has plausibly alleged he was able to perform the essential job functions of a ramp agent, with or without reasonable accommodation. Most compelling on this issue are the allegations by Zimmerman that he disclosed he was deaf during an interview, was then hired by SkyWest as a ramp agent, and worked in that role from November 2019 until January 2020 without incident. Doc. No. 7, ¶¶ 16, 17, 27-28. Accepting these allegations as true, which the Court must, Zimmerman has plausibly alleged he was qualified.

Moreover, deciding the Rule 12(b)(6) motion on an affirmative defense itself, where SkyWest has the burden, is premature on these alleged facts. Again, without commenting on the merits of the defense, the Court is tasked in this motion with only deciding whether Zimmerman plausibly alleged his disability discrimination claim. He has done so. Whether those claims are ultimately successful on the merits, it is a question for another stage of the litigation. More facts will be necessary to determine whether Zimmerman posed a direct threat. Accordingly, the Court denies SkyWest's motion to dismiss Zimmerman's disability discrimination claims.

### B. Failure to Accommodate under the ADA (count I) and NDHRA (count IV)

SkyWest next argues that Zimmerman cannot establish claims for failure to accommodate because "Zimmerman admits that SkyWest provided [closed captioning for the CBTs]" and that Zimmerman did not request the other two accommodations at issue—use of hearing aids and use of headlamp. Doc. No. 10, p. 8. Zimmerman argues he has sufficiently pleaded claims for failure to accommodate because SkyWest allegedly "abandoned the interactive process to determine an alternative accommodation . . . and did not accept [Zimmerman's] reasonable accommodation to use his hearing aids and a head lamp." Doc. No. 11, p. 9.

As to the interactive process, the Eighth Circuit has explained that to "show an employer breached its duty to engage in the interactive process, an employee must show 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." McNeil v. Union Pac. R.R. Co., 936 F.3d 786, 791 (8th Cir. 2019) (internal citation and quotation omitted).

Here, the Court finds Zimmerman alleged plausible failure to accommodate claims. Zimmerman's amended complaint alleged facts as to each element of a failure to accommodate claim. First, as to knowledge, Zimmerman told local management he was deaf during an initial interview, and SkyWest learned about Zimmerman's disability after his supervisor sent the request for closed captioning to access the CBTs. Doc. No. 7, ¶¶ 17, 25. Second, as to requested accommodations, not only did Zimmerman request accommodations for the CBTs, but his audiologist recommended additional accommodations of hearing aids and a head lamp when working in the dark. Id. ¶ 41. And finally, Zimmerman alleges a lack of good faith because

SkyWest rejected the headlight and hearing aid accommodation, failed to respond to his audiologist's request for SkyWest to clarify the purpose of the onsite observation, failed to have any audiologist conduct an onsite observation, and did not evaluate or assess his ability to safely conduct the ramp agent duties. Id. ¶¶ 41, 43, 46. Accepting as true the allegations from the amended complaint, and drawing reasonable inferences in Zimmerman's favor, there are sufficient factual allegations present to support a plausible failure to accommodate claim. As such, the Court denies SkyWest's motion to dismiss those claims.

C. **Retaliation under the ADA (count III) and NDHRA (count IV)**

Lastly, SkyWest argues Zimmerman failed to plausibly allege claims for retaliation under the ADA and NDHRA. As recently stated by the Eighth Circuit:

> Title V of the ADA prohibits retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a claim under this provision, [plaintiff] needed to show that (1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007).

Rinehart v. Weitzell, 964 F.3d 684, 689 (8th Cir. 2020).

Here, Zimmerman sufficiently alleged that he was engaged in a statutorily protected activity in requesting close captioning and the use of hearing aids and a head lamp, among other things. Doc. No. 7, ¶¶ 17, 21, 41. Zimmerman also alleged that when meeting with two of SkyWest's local management, Zimmerman "asked why he was placed on administrative leave and stated he believed he was being discriminated against based on his disability." Id. ¶ 36. Sometime after these two occurrences, Zimmerman was terminated—clearly an adverse action. Id. ¶ 48. And lastly, Zimmerman alleges a causal connection between the adverse action and the protected activity. See id. ¶ 82 ("As a direct result of Mr. Zimmerman's request for reasonable

10

accommodation of close captioning, he was placed on a protracted investigation into his disability, and he was placed on administrative leave. As described in the facts set forth above, SkyWest terminated his employment in retaliation of Mr. Zimmerman's this [sic] good faith effort to see reasonable accommodation for alleging discrimination[.]"); see also id. ¶¶ 35,48-49, 110.

While SkyWest argues that the retaliation claims are implausible because they "rest on alleged conduct by SkyWest that is lawful" (Doc. No. 10, p. 2), again these arguments are premature. Indeed, the facts may develop to prove that SkyWest's conduct was, in fact, lawful and not retaliatory, but that is a question the Court cannot resolve on the pleadings. At this point, the sole question before the Court is whether Zimmerman plausibly alleged his retaliation claims under Rule 12(b)(6). He has, and the Court denies SkyWest's motion to dismiss the retaliation claims.

### IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, SkyWest's motion to dismiss (Doc. No. 10) is **DENIED**. Given the extensive briefing on the motion, the Court also **DENIES** Zimmerman's motion for oral argument (Doc. No. 13).

**IT IS SO ORDERED**.

Dated this 25th day of August, 2022.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court