**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| David Zimmerman, | ) | |
| | ) | **ORDER GRANTING SUMMARY** |
| Plaintiff, | ) | **JUDGMENT** |
| | ) | |
| vs. | ) | Case No. 3:22-cv-45 |
| | ) | |
| SkyWest Airlines, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Defendant SkyWest Airlines, Inc. ("SkyWest") moves for summary judgment in this employment disability discrimination and retaliation case. Doc. 58. Plaintiff David Zimmerman opposes the motion (Doc. 63) and moves for a hearing (Doc. 73). As explained below, SkyWest's motion is granted, and Zimmerman's motion for a hearing is denied.

**I.   FACTS**

In September 2019, Zimmerman applied for a part-time ramp agent position with SkyWest in Devils Lake, North Dakota. Doc. 62-1 at 35. Zimmerman is deaf and relies heavily on lip-reading. Even with hearing aids, if he cannot see a person's lips, he cannot understand what a person is saying. Id. at 13-16. His hearing aids make it easier to discriminate between background noise and voices, but they do not allow him to pick out individual words. Doc. 62-2 at 61-62. He cannot understand speech that occurs behind him. Doc. 62-1 at 13-16.

In his application, Zimmerman disclosed to SkyWest that he was deaf. Id. at 46. He stated the only accommodation he needed was closed captioning for computer-based training classes. Id. at 45-46. SkyWest hired him. Id. at 47-48. Zimmerman completed the required training for the position, though he asked for assistance when some of the computer-based training classes did not

have closed captioning. Id. at 67-68. SkyWest provided him with scripts for the trainings that did not have closed captioning. Id. at 70.

In November 2019, SkyWest's Employee Relations Department became aware of Zimmerman's request for closed captioning. Doc. 62-3 at 143-44; Doc. 62-14. SkyWest Employee Relations Manager Tufi Naea set a meeting with Zimmerman and his supervisor. Doc. 62-1 at 164-65. At this meeting, Naea asked about Zimmerman's hearing. Id. Zimmerman said he was deaf and that even with hearing aids, he could not clearly understand verbal communication without lip-reading. Doc. 62-3 at 147-50. He also disclosed to Naea that he was removing his hearing aids when on the tarmac.[1] Id. at 148. Due to safety concerns, Naea asked Zimmerman to provide information from his medical provider about his condition and about what accommodations might be needed for him to safely perform the essential functions of a ramp agent. Id. at 161-63.

On December 2, 2019, Zimmerman submitted the form Naea had requested. The form stated the only accommodations needed were closed captioning and use of hand signals—but the form was completed by Zimmerman, not a medical provider. Doc 62-16 at 2-3. Naea again asked that Zimmerman have his medical provider complete the form. On December 3, 2019, Zimmerman submitted a form completed by Nurse Practitioner Christine Syverson. She indicated that Zimmerman could perform all the essential functions of his job with hand signals and closed captioning. Id. at 83-84. But the form also stated that face-to-face communication was necessary to effectively communicate with Zimmerman. Id.

As he continued to work as a ramp agent, SkyWest became concerned about safety issues. Zimmerman's supervisor, Keri Orrock, witnessed several incidents where Zimmerman was unable to communicate with others while working. First, Orrock noticed that Zimmerman was unable to

---

[1] The tarmac is the area of an airport where airplanes taxi, or pull up to a gate, or head out to the runway.

2

hear anything when the auxiliary power units ("APUs") of aircrafts were turned on. Doc. 62-19. Orrock relayed her concern to Naea in an e-mail: "When the APU is off he can hear the backup beeps . . . but I worry when he can't hear it." Id. Further, Orrock and Zimmerman both testified about an incident where Zimmerman was sitting in the driver's seat of a belt loader, and he failed to remove the chocks from behind the wheels. Doc. 62-4 at 27. Orrock was behind Zimmerman, preparing to remove the chocks, when she heard the beeping noise from the belt loader, indicating that Zimmerman was backing up. Id. She shouted to get Zimmerman's attention, but he did not hear her. Id. Zimmerman admitted that he only saw Orrock after she moved out in front of him and waved to get his attention. Doc. 62-1 at 167-70. Orrock reported her concerns to Naea. Doc. 62-4 at 26-27; Doc. 62-3 at 170-72. Devil's Lake Airport General Manager, Kimberly Idland, also reported that other employees raised concerns that Zimmerman "could not properly communicate with agents on the ramp." Doc. 62-5 at 90-91.

Naea then scheduled another meeting with Zimmerman to discuss the medical information he provided and to see if they could resolve some of the concerns that had been raised. Doc. 62-3 at 176-77. Following that meeting, Zimmerman agreed to provide additional medical information from his audiologist, Dr. Brady Ness. Doc. 62-1 at 174.

On January 8, 2020, Zimmerman submitted another accommodation form, completed by Dr. Ness. Doc. 62-20. Dr. Ness recommended that, to allow Zimmerman to perform the essential functions of the position, SkyWest should "allow for communication to take place in a well-lit environment and in a reasonably quiet setting to improve upon communicative abilities." Id. Dr. Ness testified that these recommendations were "common-sense audiology recommendations for anyone with a hearing impairment." Doc. 62-2 at 34. Based on the information from Zimmerman's medical providers, and the information reported to her by Orrock and Idland, Naea was concerned

that having Zimmerman continue to work as a ramp agent posed a significant safety risk to himself and other employees. Doc. 62-3 at 170-72.

A few days later, Naea met with Zimmerman again. Naea told him that SkyWest was placing him on a paid administrative leave for 30 days. She explained that this was to give Zimmerman time to apply for another job with SkyWest. Doc. 62-22. Zimmerman declined to look for another position. Id. at 191-92. SkyWest then offered him a comparable position as a gate agent at the same airport. Id. at 192-93. Zimmerman also declined that position. Id. SkyWest then extended his paid administrative leave for another 30 days. Id. at 218-19.

On February 10, 2020, Dr. Ness provided a second accommodation form with additional information. Doc. 62-23. This form stated that Zimmerman had a new program installed on his hearing aids to reduce feedback when he was wearing his Federal Aviation Administration-required earmuffs on the ramp. Id. But that did not resolve SkyWest's safety concerns. Doc. 62-3 at 204. Meanwhile, Zimmerman continued to decline to look for and apply for other positions with SkyWest. Doc. 62-1 at 275. So, on March 19, 2020, Naea, Orrock, and Idland met with Zimmerman and told him SkyWest was terminating his employment. Doc. 62-4 at 171-75.

Zimmerman brings six claims against SkyWest—three under the Americans with Disabilities Act (the "ADA") and three under the North Dakota Human Rights Act (the "NDHRA"). Doc. 7. Under the ADA, he alleges failure to accommodate (count I), disability discrimination (count II), and retaliation (count III). Id. Under the NDHRA, he alleges failure to accommodate (count IV), disability discrimination (count V), and retaliation (count VI). Id.

## II.     LAW AND ANALYSIS

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248).

At summary judgment, the non-movant bears an affirmative burden "to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

### A. Disability Discrimination Claims and Direct Threat

Starting with Zimmerman's disability discrimination claim, SkyWest argues it is entitled to summary judgment for three reasons—(1) Zimmerman is not a "qualified individual" under the ADA because he could not perform the essential functions of his job without accommodations; (2) Zimmerman did not suffer an adverse employment action because of his disability; and (3) Zimmerman posed a direct threat to employee safety. Zimmerman argues that fact questions preclude summary judgment on these claims.

**1.     Disability Discrimination**

The ADA[2] prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, a plaintiff "must show that he (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (quoting Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002)).

As to the first element, neither party disputes that Zimmerman is disabled under the ADA. And when viewing the facts in Zimmerman's favor as the non-moving party, his ultimate termination likely satisfies the third element for the purposes of surviving summary judgment. So, the central issue as to the prima facia case becomes whether Zimmerman is a "qualified individual."

"To be a 'qualified individual' within the meaning of the ADA, an employee must '(1) possess the requisite skill, education, experience, and training for h[is] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" Id. at 712 (quoting Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir. 2001)). An employer can show what job functions are essential through evidence, including the employer's judgment as to which functions are essential, written job descriptions, the amount of time spent performing the function, the consequences of not performing the function, and the current work of others in a similar job. See Dropinski v. Douglas Cnty., Neb., 298 F.3d 704, 707 (8th Cir. 2002).

---

[2] ADA claims and NDHRA claims are analyzed under the same standard. See McClean v. Case Corp., 314 F. Supp. 2d 911, 916 (D.N.D. 2004); Fish v. Ristvedt, 192 F. Supp. 2d 1024, 1028 (D.N.D. 2002).

6

The job duties for the ramp agent position are described in the written job description (Doc. 62-8) and include operating portable radio or headphones, driving and operating motorized equipment, and using signaling devices to communicate with co-workers or flight crew. Zimmerman admitted he was unable to operate a portable radio to communicate with others. Doc. 62-1 at 111. He also acknowledged a safety incident operating a belt loader, a piece of motorized equipment. Id. at 169-73 This presents some evidence that Zimmerman was not a qualified individual for the ramp agent position. But two facts cut against SkyWest—(1) it hired Zimmerman as a ramp agent, despite him disclosing on his application that he was deaf, and (2) he did perform the job duties of a ramp agent, albeit for a short period of time. While a close call, there is a genuine issue of material fact as to whether Zimmerman is a "qualified individual" under the ADA, precluding summary judgment on the prima facia claim of disability discrimination.

### 2. Direct Threat

That is not the end of the analysis though. Summary judgment is appropriate on SkyWest's direct threat defense. An otherwise qualified disabled employee that poses a "direct threat" to the health or safety of others does not fall within the discrimination protections of the ADA. EEOC v. Wal-Mart Stores, Inc., 477 F.3d 561, 571 (8th Cir. 2007).[3] Whether an individual poses a "direct threat" is determined based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)). The factors considered as a part of the assessment are (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm. 29 C.F.R. § 1630.2(r).

---

[3] "In the Eighth Circuit, an employer's safety concerns are not part of the prima facie case for disability discrimination, but whether an individual poses a danger to himself or others is relevant for evaluating the employer's affirmative defense of direct threat." Sanders v. Union Pac. R.R. Co., No. 4:20CV3023, 2021 WL 4783629, at *7, n.6 (D. Neb. Oct. 7, 2021).

7

An employer bears the burden of proof in proving a direct threat defense. Wal-Mart, 477 F.3d at 571.

Here, the record shows that SkyWest conducted an individualized assessment of Zimmerman's ability to safely perform the essential functions of a ramp agent. Once Zimmerman requested closed captioning for the training videos, SkyWest started working with him to gather additional medical information to assess whether he could safely perform the ramp agent functions. And Dr. Ness (Zimmerman's audiologist) provided individual feedback. Dr. Ness stated Zimmerman could perform the essential functions of the ramp agent position if SkyWest allowed "for communication to take place in a well-lit environment and in a reasonably quiet setting to improve upon communicative abilities." Doc. 62-20. Relying on the information from Dr. Ness, and the fact that ramp agents work in noisy and often dark environments, SkyWest determined Zimmerman could not safely perform the ramp agent functions. See Michael v. City of Troy Police Dep't, 808 F.3d 304, 307, 309 (6th Cir. 2015) ("An employer's determination that a person cannot safely perform his job functions is objectively reasonable when the employer relies upon a medical opinion that is itself objectively reasonable.").

The four factors in 29 C.F.R. § 1630.2(r) also support SkyWest's direct threat determination. As to the first factor, the duration of the risk is continuous and indefinite. Zimmerman is "profoundly deaf," (Doc. 62-1 at 241) and there is nothing in the record suggesting that he can consistently and effectively communicate with individuals who are not in his line of sight. As to the second factor, the nature and severity of the potential harm is significant, as it is undisputed that ramp agents work in a fast-paced environment with heavy machinery. Doc. 62-4 at 182-84. Third, as to the likelihood of potential harm, the record notes one near-miss incident where another employee was almost run over because of the inability to communicate with

Zimmerman, which demonstrates the likelihood of future incidents. And finally, it is undisputed that the ramp agent works on the tarmac every shift, so the potential harm is imminent.

Many courts within this circuit have granted summary judgment on the direct threat defense when there is no accommodation that can remedy the danger or threat posed by the employee's disability. Onken v. McNeilus Truck & Mfg., Inc., 639 F. Supp. 2d 966, 979 (N.D. Iowa 2009); McClean v. Case Corp., 314 F. Supp. 2d 911, 919 (D.N.D. 2004); Johnson v. City of Blaine, 970 F. Supp. 2d 893, 909 (D. Minn. 2013). This case presents similar facts. Dr. Ness testified that, even with updated hearing aids, Zimmerman would not be able to effectively communicate with individuals who are not in his line of sight. Doc. 62-2 at 32. He also stated there are many variables that impact what Zimmerman can or cannot hear at any given time. Id. at 23-24. In an environment like the tarmac, Zimmerman's inability to consistently communicate places other employees in direct danger, and there is no evidence any accommodation would remedy the safety risk. Because Zimmerman posed a direct threat, summary judgment is granted on the disability discrimination claims.

### B.     Failure to Accommodate Claims

SkyWest next moves for summary judgment on Zimmerman's failure to accommodate claims. Zimmerman argues SkyWest did not properly engage in the interactive process with him. To "show an employer breached its duty to engage in the interactive process, an employee must show 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." McNeil v. Union Pac. R.R. Co., 936 F.3d 786, 791 (8th Cir. 2019) (cleaned up). "For a failure-to-accommodate claim to

9

survive summary judgment, an employee must show that his employer failed to engage in the interactive process in good faith." Mobley v. St. Luke's Health Sys., Inc., 53 F.4th 452, 457 (8th Cir. 2022); Ehlers v. Univ. of Minn., 34 F.4th 655, 662 (8th Cir. 2022) (finding summary judgment for employer was appropriate as to whether good-faith efforts to accommodate were made).

Here, Zimmerman cannot meet the fourth element because SkyWest did reasonably accommodate him by offering him the comparable position as a gate agent. "In order for an employee to prevail on an ADA claim where the employer has offered the employee reassignment as a reasonable accommodation, the employee must offer evidence showing both that the position offered was inferior to his former job and that a comparable position for which the employee was qualified, was open." Minnihan v. Mediacom Commc'ns Corp., 779 F.3d 803, 814 (8th Cir. 2015) (cleaned up). Here, the gate agent position had the same location, hours, and rate of pay as the ramp agent position. Doc. 59 at 14. That position would have allowed Zimmerman to communicate with others in a well-lit and less noisy environment (as compared to a tarmac), fitting the recommendations of Dr. Ness. But Zimmerman declined the reassignment, and that is fatal to his failure to accommodate claims. See e.g. Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 933 (8th Cir. 2012) (affirming summary judgment on a failure to accommodate claim, where the plaintiff turned down reassignment to a comparable position). SkyWest offered a reasonable accommodation to Zimmerman, making summary judgment appropriate on the reasonable accommodation claims.

### C. Retaliation Claims

Finally, SkyWest moves for summary judgment on Zimmerman's retaliation claims. As stated by the Eighth Circuit Court of Appeals:

> Title V of the ADA prohibits retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because

>such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a claim under this provision, [plaintiff] needed to show that (1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity. See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007).

Rinehart v. Weitzell, 964 F.3d 684, 689 (8th Cir. 2020). The adverse employment action must be serious enough to "dissuade[ ] a reasonable worker," not just Zimmerman himself, from engaging in protected conduct. Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)).

Zimmerman points to two adverse actions in support of his retaliation claims. The first is SkyWest's decision to further investigate his hearing disability and his position as a ramp agent after he requested closed captioning for training. Doc. 63 at 38. But this is not an actionable adverse action. Employers are allowed to make medical inquiries of employees, as long as those inquiries are job-related and consistent with business necessity. See 29 C.F.R. § 1630.14(c). Indeed, that type of inquiry is typically a key part of engaging in the interactive process with employees that have medical conditions and seek reasonable accommodations. And in this case, the further investigation was also a part of making a safety determination, as to Zimmerman and other employees. Because the further medical inquiry and investigation was lawful and was required on these facts, it is not an adverse action for the purposes of the retaliation claims.

The second adverse action is Zimmerman's termination. Termination is the classic adverse action, but here there is a break in the causal connection between the adverse action and the protected activity. Recall that, before termination, Zimmerman was offered a comparable position as a gate agent, but he declined the position. He was terminated after declining the reassignment, which breaks the causal connection. But even assuming Zimmerman could establish a prima facia retaliation claim with an adequate causal connection, SkyWest had a legitimate, nondiscriminatory reason to terminate his employment because he posed a direct threat to the safety of himself and

11

others. Said another way, Zimmerman was terminated because he refused reassignment to a comparable position and because he was a direct threat to the safety of others in the gate agent position. Given those facts, the retaliation claims fail, and summary judgment is appropriate.

## IV. <u>CONCLUSION</u>

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons above, SkyWest's motion for summary judgment (Doc. 58) is **GRANTED**. Given the extensive briefing on the motion, Zimmerman's motion for a hearing (Doc. 73) is **DENIED**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 26th day of January, 2024.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court